IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HERBERT J. BUHR,

        Plaintiff,       OPINION AND ORDER

   v.

                   08-cv-762-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of

Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Herbert J. Buhr seeks

reversal of the commissioner's determination that because he was not disabled, he is not

eligible for Disability Insurance Benefits under Title II of the Social Security Act, codified

at 42 U.S.C. §§ 416(i) and 423(d).

Although plaintiff raises several challenges to the adjudicator's decision, he fails to cite

sufficient evidence in the record to support his assertions or to explain in any convincing way

why the administrative judge erred.  At most, plaintiff disagrees with the conclusions reached

by the administrative law judge.

1

Plaintiff objects to the administrative law judge's decision to hold a second hearing without letting plaintiff submit rebuttal vocational evidence. Although it was unusual to hold a second hearing, it was necessary in this instance because plaintiff had not provided all of the medical evidence relevant to his impairments at the first hearing. To the extent that any rebuttal evidence was necessary, plaintiff had an opportunity to submit it after the second hearing. He has not suggested that he had any such evidence. In any event, at the second hearing, the administrative law judge considered evidence that contradicted both the testimony of the medical and vocational experts. Plaintiff was not prejudiced by the hearing procedures used by the administrative law judge in this case.

Second, plaintiff contends that the administrative law judge erred in considering plaintiff's impairments. He argues that the administrative law judge should have found that he had a severe impairment of chronic pain syndrome with depression, but at the time the administrative law judge reached his decision, the record contained no evidence to support such a finding. Although plaintiff contends that the administrative law judge should have found that plaintiff's impairments met or equaled listed impairments, he has failed to identify any specific listings that are applicable or any evidence the administrative law judge failed to consider in making his step three finding.

Third, plaintiff argues in cursory fashion that the administrative law judge did not properly determine plaintiff's residual functional capacity because he erred in determining

2

plaintiff's credibilty, failed to give proper weight to the opinion of plaintiff's treating physician and failed to consider the side effects of plaintiff's prescribed medications. However, a review of the administrative law judge's opinion shows that he considered all of the evidence of record and built an accurate and logical bridge from the evidence to his conclusion that plaintiff's testimony concerning his pain and limitations was not entirely credible.

Finally, plaintiff contends that the administrative law judge erred at step five by finding that jobs existed in the regional economy that plaintiff could perform.  He did not err at step five because he relied on the testimony of vocational expert in response to a hypothetical question posed to her that included all of plaintiff's limitations that were supported by the record.

For these reasons, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

3

Plaintiff was born on June 29, 1966.  AR 34.  He has a high school education and completed one year of college.  He worked as a forklift driver until he was injured on August 22, 2003.  AR 51-52.

Plaintiff applied for disability insurance benefits on March 30, 2004, alleging disability as of August 22, 2003 because of a back injury.  AR 24.  Plaintiff's last insured date was March 31, 2008.  AR 27.  After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on December 5, 2006 before Administrative Law Judge Larry Meuwissen in Duluth, Minnesota.  AR 41-75.  Because plaintiff's counsel had not provided all available medical and other evidence, the administrative law judge requested those records and held a second hearing on September 28, 2007 in Minneapolis.  He heard testimony from plaintiff, a neutral medical expert and a neutral vocational expert.  AR 80-125.  On January 25, 2008, the administrative law judge issued a written decision, finding plaintiff not disabled.  AR 24-35.  This decision became the final decision of the commissioner on November 7, 2008, when the Appeals Council denied plaintiff's request for review.  AR 7-9.

### B. Medical Evidence

1. Prior to alleged onset date of August 22, 2003

Plaintiff received treatment for low back pain starting in 1989.  AR 521.  In 1994, he was treated for mild congenital hand tremors.  AR 507.  In 2000, he received chiropractic treatment for back pain.  AR 551, 560, 572.

Plaintiff sought treatment from St. Croix Regional Medical Center emergency room for extreme back pain on April 29, 2002.  AR 463.  A May 7, 2002 magnetic resonance imaging scan showed that he had disc herniation at three levels, AR 459, for which he received two epidural injections that month.  AR 575, 586.  Plaintiff saw Dr. Patrick Healy, who concluded after reviewing the scan that plaintiff could do sedentary work, use his hands for simple grasping as well as fine manipulation and occasionally bend, squat and climb.  AR 346-47.  Healy noted that although plaintiff described an extremely disabling condition, his appearance was not necessarily that of a person in severe pain.  He also noted that plaintiff did not request additional pain medication.  AR 344.

In June 2002, plaintiff saw neurosurgeon Michael Ebersold, who reached a diagnosis of degenerative disc disease with no objective findings of radiculopathy.  He noted that the subjective findings were out of proportion to the objective findings and did not recommend surgery.  AR 481.  After reviewing Ebersold's notes, Dr. Healy concluded that plaintiff was exaggerating his complaints and suggested that he return gradually to full-time work.  AR 342.  Healy prescribed Vicodin.  AR 332, 335-36.

5

On July 1, 2002, Dr. Healy noted that plaintiff's employer had reported that plaintiff was exaggerating his injury and engaging in activities beyond the level of activity he claimed to be able to tolerate.  Healy increased plaintiff's work capability from five to six hours a day. AR 340.

2. Records after August 22, 2003

a. Nurse Wanda Brown

On August 28, 2003, plaintiff saw Nurse Wanda Brown for followup of his emergency room treatment for his August 22, 2003 back injury.  She referred him to Dr. Thomas Rieser. AR 454.  She noted that plaintiff expressed a strong desire to return to his job before he lost it because it was one that he was able to do well with his previous back condition.  AR 455.

On September 3, 2003, plaintiff returned to see Brown, who referred him to physical therapy for evaluation and treatment.  She prescribed Ultracet for him.  AR 445-52.  A September 10, 2003 magnetic resonance imaging scan did not show any changes from the May 2002 scan.  AR 447.

b. Dr. Stephen M. Endres

On September 25, 2003, plaintiff began a series of epidural injections with Dr. Stephen Endres at the pain clinic.  AR 480.  On November 20, 2003, Endres performed a

6

selective three level diskography on plaintiff.  AR 473.  He concluded that plaintiff's 3-4 disc

seemed to be the source of plaintiff's pain.  AR 474.

On March 9, 2004, Dr. Endres performed a 3-4 interdisk electrothermal therapy on

plaintiff.  AR 468.  Endres discharged plaintiff on April 30, 2004.  AR 467.


c.  Dr. Arne Lagus

On December 8, 2003, plaintiff saw Dr. Arne Lagus, who plaintiff a diagnosis of

degenerative disc disease.  Lagus prescribed Percocet and Methadone and recommended

physical therapy.  AR 427.  A June 7, 2004 magnetic resonance imaging scan showed disc

bulging at L4-5, multiple level degenerative facet changes in the lower lumbar spine and disc

dissection at L3-4 and L4-5.  AR 655.

In December 2005, Dr. Lagus noted that plaintiff had lost 15 pounds since May.  AR

514.  In February 2006, Lagus increased plaintiff's methadone dosage.  AR 511.  In April,

plaintiff told Lagus that he had stopped taking prescription pain medications because they

caused him constipation.  AR 508.  In November, plaintiff reported that he had gained

weight and had not been walking much.  AR 652.  In December, Lagus wrote that plaintiff's

hand tremors would preclude him from doing tasks that required manual dexterity.  AR 517-

58, 650.

Plaintiff saw Dr. Lagus three times in 2007.  AR 647-49.  Lagus noted that plaintiff was walking more and had lost 40 pounds.  AR 647.  He continued plaintiff's prescription for methadone but discontinued his prescriptions for Percocet and Vicodin.  AR 647.

On August 27, 2007, Dr. Lagus wrote a letter stating that plaintiff would likely undergo lumbar spine surgery in the near future.  He noted that plaintiff walked with a serious limp and was bent forward and had shown no improvement over the last three years.  AR 655.

d.  Dr. T. Sunil Thomas

On July 25, 2005, plaintiff saw Dr. Thomas at a pain clinic.  On examination, Thomas noted that plaintiff's strength and reflexes in his lower extremities were normal but his range of motion was limited, secondary to pain.  He diagnosed multilevel lumbar disc disease with discogram showing annular tears at all levels.  AR 465.  He recommended that plaintiff stop smoking and lose weight.  He stated that he would not advocate surgery for a smoker.  AR 466.

e.  Dr. Thomas Rieser

On July 6, 2004 plaintiff saw Dr. Rieser, who reviewed the magnetic resonance imaging scan results with him.  He recommended that plaintiff stop taking methadone and

8

Vicodin and take Celebrex.  Rieser concluded that plaintiff should be able to do sedentary work with no repetitive lifting, bending or twisting.  AR 362.

C.  <u>Independent Medical Examinations</u>

1.  <u>Dr. Paul Belich</u>

On July 28, 2004, Dr. Paul Belich performed an independent medical examination of plaintiff and diagnosed degenerative lumbar disc disease.  He concluded that, although plaintiff's work injury in August 2003 temporarily aggravated a pre-existing condition, the work injury had resolved.  Belich did not know why plaintiff was on methadone and recommended a spine or low back rehabilitation program for his pre-existing condition.  He did not recommend surgery.  AR 636-39.  On August 11, 2004, after reviewing additional information, Belich submitted a report in which he concluded that plaintiff was not a good candidate for surgery.  AR 634-35.

On April 1, 2005, plaintiff was re-evaluated by Dr. Belich, who reported as follows (AR 630):

> My belief is that the prognosis on this claimant is extremely poor, primarily because of an enormous amount of emotional, functional overlay, symptom magnification and I believe this is complicated by the claimant's continued use of strong narcotic analgesics, which I believe is very ill advised.

9

Belich noted that Dr. Lagus examined plaintiff only superficially and gave him many different types of narcotic pain analgesics.  AR 629.  He further explained that in his 28 years of orthopedic practice, he had never seen anyone walk with such an abnormal gait and stance pattern accompanied by magnetic resonance imaging results similar to those of plaintiff's.  He wrote that "[t]hese MRI results simply would not give someone a clinical picture that Mr. Buhr presents.  This is why I believe that there are other factors—supersensorial factors, chronic behavioral-type factors and chemical dependency factors that are at work in this claimant. . ." AR 631.  Belich concluded that these other factors would prevent plaintiff from getting well and returning to work.  AR 631.

2.  <u>Dr. James Allen</u>

On January 30, 2004, Dr. James Allen performed an independent medical examination of plaintiff and reviewed his medical records.  On examination, Allen noted that plaintiff had normal sensation, including in the right lower extremity, and normal strength and coordination in all extremities.  He saw no radiculopathy.  He concluded that there was a good likelihood that plaintiff could return to his job as a forklift operator.  AR 619-26.

D.  <u>Vocational Evaluations</u>

1.  <u>Jack H. Casper</u>

10

On October 20, 2004, Jack H. Casper, a vocational consultant, performed a vocational evaluation of plaintiff at the request of his counsel.  Casper interviewed, assessed and tested plaintiff, reviewed the labor market and the medical record and analyzed plaintiff's transferable skills.  Plaintiff reported that he lies down to relieve his pain.  Casper noted that plaintiff resided in a small rural labor market, with little variety of jobs, few total jobs, high competition for work and significant unemployment.  After reviewing the records of Drs. Lagus and Rieser, Casper concluded that plaintiff was 100 percent vocationally disabled.  AR 216-23.

### 2. Joyce Jacobs

On January 5, 2005, Joyce Jacobs at the Division of Vocational Rehabilitation met with plaintiff.  She observed that he was in a lot of pain, frequently changed positions and had difficulty walking.  She noted that his hands shook.  Plaintiff stated that he was "healthy as a horse" and was interested in returning to work.  AR 276.

Plaintiff was denied vocational rehabilitation services on January 5, 2005 because of lack of funding.  AR 230.  He was denied service for the same reason on January 13, 2005.  AR 281.

### 3. Jay R. Smith

11

On March 4, 2005, Jay Smith, a vocational consultant, evaluated plaintiff's loss of earning capacity. Smith concluded that plaintiff could not do sedentary jobs because he did not possess the work or educational background to qualify for such employment. Smith stated that he could not give an opinion regarding plaintiff's future earning capacity because plaintiff had not completed a vocational rehabilitation program. AR 240-42.

4. Jeb Kaiser

Plaintiff was evaluated at the Stout Vocational Rehabilitation Institute by Jeb Kaiser from April 17 to April 26, 2006. Plaintiff reported that he had hand tremors and was unable to sit for more than 45 minutes. Kaiser reported that plaintiff experienced difficulty tolerating physical demands and that when he took Vicodin for pain, his concentration was affected. Kaiser concluded that plaintiff could lift no more than 10 pounds, required a change in position every 20 to 30 minutes, had below average dexterity because of tremors, difficulty with bending and twisting and reduced powers of concentration. AR 292-94.

E. Consulting Physicians

On December 7, 2004, state agency physician Michael Baumblatt completed a physical functional capacity assessment for plaintiff, finding that plaintiff had back pain. He found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently and

12

could sit, stand or walk about six hours in an eight hour work day with frequent climbing, stooping and crouching.  AR 378-85.

On May 18, 2005, state agency physician Pat Chan completed a physical residual functional capacity assessment for plaintiff, determining that plaintiff suffered from multi-level degenerative disc disease and obesity.  He found that plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, stand or walk two hours in an eight-hour work day and sit six hours in an eight-hour work day with only occasional kneeling.  AR 389-96.

F.  Hearing Testimony

1.  First hearing

At the first hearing, the administrative law judge asked plaintiff's counsel whether he had provided all the materials relating to examinations and treatment for plaintiff's alleged impairments.  Plaintiff's counsel stated that he would provide the additional records.  AR 45-47.

Plaintiff testified that he stood six feet tall and weighed 260 pounds.  AR 47.  He testified that he lived with his father in Shingle Creek Falls, Wisconsin and drove four times a week.  AR 48.  Plaintiff testified that he had lower back pain that extended into his right leg, that he could sit for an hour, walk for half an hour and lift 10 pounds.  Also, he had

13

tremors in his hands that affected his handling of intricate things.  AR 50, 55, 60.  He testified that he was born with his hand tremors.  AR 52,

Plaintiff testified that he was taking methadone but had taken Vicodin and Percocet, which affected his ability to think.  AR 54.  He testified that he had not had surgery but had received some injections that did not help.  AR 56-57.  Plaintiff testified that he smoked about a half a pack of cigarettes a day, AR 61; he walks and does grocery shopping and laundry, AR 61-63; and he had received a worker's compensation settlement for his back injury.  AR 53.

The administrative law judge called Warren Haagensen to testify as a neutral vocational expert.  The administrative law judge asked the expert whether a person who would miss work more that two days a month could work.  The expert responded that he could not.  AR 76.  At the conclusion of the hearing, the administrative law judge stated that he needed all the records to determine whether plaintiff could sustain full-time competitive work because of absenteeism.  AR 78.

2.  Second hearing

At the second hearing, the administrative law judge asked plaintiff whether there had been any significant changes in his condition since the last hearing.  Plaintiff responded that he had lost almost seventy pounds by walking and had not pursued schooling because he

14

could not afford it.  AR 83, 86.  Plaintiff testified that he could not work or go to school every day because the pain medication affected his ability to think.  Further, he testified that some days he is unable to get out of bed because of his back pain and that every other month he had flareups of pain that could last a week.  AR 90.  He testified that he took methadone three times a day and Vicodin when he had a pain flareup.  AR 94.

The administrative law judge called Dr. Andrew Steiner to testify as a neutral medical expert.  AR 98.  Steiner summarized the medical record, finding that plaintiff had low back pain with some lower extremity radiation and a diagnosis since May 2002 of multi-level degenerative disc disease with some loss of range of motion but no radicular neurological losses.  He also found significant evidence of non-organicity to plaintiff's pain complaints.  Although plaintiff had a hand tremor, he had no loss of strength or coordination in the upper extremities.  Steiner testified that plaintiff's impairments did not meet or equal a listed impairment, whether considered singly or in combination.  AR 99.

Dr. Steiner concluded that plaintiff could perform lifting at the sedentary level with unlimited time on his feet, but only occasional bending, twisting, stooping, kneeling, crawling, crouching, climbing, balancing and fine manipulation.  He also found that plaintiff should not work at unprotected heights or around hazardous machinery because of the medications he was taking.  Steiner testified that these limitations began on August 22, 2003 but nothing in the medical record indicated that plaintiff would be laid up for long periods

of time with flareups of back pain. AR 100. On cross examination, Steiner testified that plaintiff's medical records showed that plaintiff had the ability to perform at least sedentary level work on a regular basis. AR 103.

Next, the administrative law judge called Julietta Harren to testify as a neutral vocational expert. AR 104. The administrative law judge asked Harren to assume a person of plaintiff's age and education who could perform sedentary work with only occasional bending, twisting, stooping, kneeling, crawling, crouching, climbing, balancing and fine manipulation but who could not work around unprotected heights or hazardous moving machinery. Then he asked her whether there were jobs in the regional or national economy that the individual could perform. AR 106. She testified that there were three jobs that the individual could perform:  surveillance system monitor, 379.367-010, call out operator, 237.367.04, and clerk, 205.367.030. She testified that there would be 1,000 of each of these jobs in Minnesota, AR 108, and that there would be no keyboarding requirements in these occupations. AR 116. The administrative law judge asked Harren whether her testimony was consistent with the Dictionary of Occupational Titles, and she responded that it was. AR 109. Further, she testified that a person who missed a week three to four times a month could not perform these jobs. She explained that two absences a month would be the maximum number of absences allowed for a person performing the identified jobs. AR 109.

3.  Requests to submit additional evidence

On October 3, 2007, plaintiff filed a petition to submit rebuttal evidence regarding the "surprise" testimony of Harren.  Plaintiff asserted that Harren's testimony unexpectedly contradicted that of the vocational expert at the first hearing.  AR 317-21.  Initially, the administrative law judge did not respond, but on December 17, 2007, he issued a letter stating that he had kept the record open but that plaintiff had not submitted any additional evidence.  He gave plaintiff ten more days to submit additional evidence.  AR 291.  On December 19, 2007, plaintiff requested an extension of time until March 1, 2008 to submit additional vocational evidence.  AR 138.  On January 2, 2008, the administrative law judge held a telephonic hearing with plaintiff's counsel to discuss the request.  AR 126.  Plaintiff's counsel argued that the second hearing resulted in two surprise opinions.  AR 131.  The administrative law judge denied plaintiff's counsel's request and stated he was going to reach his decision on the record before him.  He found that the second vocational expert opinion was not a surprise merely because the second expert reached a different conclusion.  The administrative law judge had presented each expert with different hypothetical questions based on the facts in the record before him at the time.  Further, the administrative law judge noted that an additional vocational evaluation would not sufficiently rebut the expert's testimony.  AR 133.

17

## G. The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. §§ 404.1520, 416.920.  At step one, he found that plaintiff had not engaged in substantial gainful activity since August 22, 2003, his alleged onset date.  At step two, he found that plaintiff had severe impairments of degenerative disc disease, obesity, a history of hand tremors and a history of cocaine dependence.  AR 27.  (The administrative law judge did not say where he found evidence of cocaine dependence and I cannot locate any in the record, but the point is irrelevant.  Plaintiff did not object to this finding and nothing in the administrative law judge's decision indicates that he took it into consideration.)   At step three, the administrative law judge found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 28.

The administrative law judge found that plaintiff retained the functional capacity to lift and carry up to 10 pounds occasionally and five pounds frequently, with no limitations on standing or walking, occasional fine finger manipulation, bending, twisting, stooping, kneeling, balancing, crouching, crawling and climbing and no work at unprotected heights or around hazardous machinery.  AR 28.  He noted that although plaintiff's impairments could reasonably be expected to produce symptoms, his subjective complaints concerning the

18

severity of his symptoms and limitations were not entirely credible.  AR 20.  At step four, the administrative law judge found that plaintiff was unable to perform his past relevant work.  AR 33.

Relying on the vocational expert's testimony at the second hearing, the administrative law judge found that an individual of plaintiff's age, education, work experience and residual functional capacity could perform the requirements of representative occupations, namely surveillance monitors, call out operators and clerk positions.  He also determined that the expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles.  Accordingly, the administrative law judge found that plaintiff was not disabled.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide

questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

### B.  Challenges to Proceedings

Plaintiff argues that he was prejudiced by irregularities in the administrative proceedings in this case.  First, plaintiff argues that the administrative law judge should have reached a decision based on the evidence as it existed at the time of the first hearing because it fully supported plaintiff's position that he was disabled.  This argument ignores the fact that at the time of the first hearing, the record did not contain all of plaintiff's medical records.  Under 20 C.F.R. § 404.944, the administrative law judge may stop a hearing and continue it at a later date if he believes that material evidence is missing.  Plaintiff argues

20

that the additional evidence was not material because it was related to his worker's compensation case.   This evidence included medical examinations and opinions by independent examiners concerning plaintiff's back injury and opinions of plaintiff's treating physicians, Drs. Endres, Lagus, Thomas and Rieser,  AR 290, and it was material to plaintiff's claim for disability insurance benefits.  It was reasonable for the administrative law judge to have a second hearing based on the additional medical evidence.  Plaintiff was given notice of the hearing and of the fact that a neutral medical expert and a neutral vocational expert would testify.  AR 146.  Plaintiff has not shown that he was prejudiced by the administrative law judge's decision to hold a second hearing to address the additional medical evidence.

Second, plaintiff contends that the medical and vocational experts were "surprise" witnesses and that he should have been allowed to submit rebuttal evidence.  The substance of the medical expert's testimony is not usually provided to a plaintiff before the hearing because it is based at least in part on the plaintiff's testimony at the hearing.  Further, plaintiff's counsel had the opportunity to cross examine the medical expert.  It is not clear what evidence plaintiff would have submitted to rebut the medical expert's testimony. Plaintiff has not cited any.  Presumably, all of it was in the record for review by the medical expert.  The administrative law judge considered the opinion of the medical expert, together with the opinions of plaintiff's treating and examining physicians.

21

As to the vocational expert's testimony, plaintiff argues that it contradicted the testimony of the expert in the first hearing.  A review of the record shows that the administrative law judge was correct when he found that the two experts did not contradict each other.  At the first hearing, the administrative law judge did not pose a hypothetical question to the expert.  The expert testified only that an individual who missed more than two days of work a month could not perform competitive work in the economy.  At the second hearing, the vocational expert gave the same testimony concerning absences. However, in response to the administrative law judge's hypothetical question, she answered that there were jobs available in the regional economy that plaintiff could perform.  Further, before relying on this testimony, the administrative law judge considered the other vocational reports in the record submitted by Casper, Jacobs, Smith and Kaiser.  Plaintiff's submission of an additional vocational evaluation would have been duplicative.

I note that although there may have been a lack of communication about plaintiff's ability to present rebuttal evidence, the record was held open until December 27, 2007. Plaintiff could have submitted evidence during this three-month period after the second hearing.  In his request to submit additional evidence, plaintiff stated only that he wished to submit medical evidence and a vocational expert report to contradict the testimony of Steiner and Harren.  AR 321.  As the commissioner pointed out, plaintiff did not identify any specific evidence that he wished to produce.  The record before the adjudicator already

22

contained both medical and vocational opinions that contradicted the opinions of Steiner and Harren.

Although the proceedings before the administrative law judge were a bit unusual because of the two hearings, no error occurred in the handling of plaintiff's claim. Plaintiff had the opportunity to provide additional evidence to support his claim. Nothing in the record suggests that there was missing evidence or that plaintiff was prejudiced.

## C.  Impairments

First, plaintiff contends that the administrative law judge failed to consider at step two that plaintiff had the severe psychological impairments of depression and anxiety. The only evidence of such an impairment is an April 3, 2008 report by Dr. Cronin, AR 706, which was completed after the administrative law judge's January 25, 2008 decision. Plaintiff argues that the court should consider this report, a March 28, 2008 opinion of Dr. Lagus, AR 695, and a July 2008 vocational report of  Maureen Ziezulewiecz, AR 675. However, because plaintiff did not present this evidence until his appeal to the Appeals Council, I cannot consider it. Eads v. Secretary of Dept. of Health and Human Services, 983 F.2d 815, 818 (7th Cir. 1993) (correctness of administrative law judge's decision depends on the evidence that was before him or her). The record before the administrative law judge did not contain evidence showing that plaintiff complained of anxiety or depression. In any

23

event, as the commissioner points out, as long as the administrative law judge proceeds beyond step two, any error that he may have made in making a finding with respect to the severity of a complaint at this step is harmless.  <u>Reynolds v. Barnhart</u>, 2003 WL 444275, *13 (N.D. Ill. Feb. 24, 2003).

Second, plaintiff contends that the administrative law judge erred in not finding that plaintiff's impairments met or equaled a listed impairment.  Although plaintiff contends that his impairments meet 20 C.F.R. Pt. 404, Subpart P, App. 1, 1.00 for musculoskeletal disorders, he argues only that his impairments prevent him from ambulating and performing fine and gross movements effectively.  However, as the commissioner explains, each listed impairment has a specific medical standard that must be met.  E.g., 20 C.F.R. Pt. 404, Subpart P, App. 1, 1.01–1.08.  For example, in addition to an inability to ambulate effectively, Listing 1.04 (disorders of the spine) requires plaintiff to show a disorder of the spine resulting in nerve root or spinal cord compromise, with lumbar spinal stenosis resulting in pseudoclaudication.  Plaintiff has presented no such medical evidence.  Further, to meet Listing 1.02 (major dysfunction of a joint), plaintiff would have to show that his inability to perform fine and gross movements effectively was caused by a major dysfunction in one major peripheral joint in each upper extremity.  No evidence in the record supports plaintiff's belief that he has an impairment that meets or equals this listing.

Plaintiff contends that he has a neurological impairment, but does not cite to a specific listing.  Rather, he states that his tremors cause him a loss of motor function.  He has not submitted any medical evidence that he has a neurological impairment that meets or equals all of the criteria of a listed impairment in 20 C.F.R. Pt. 404, Subpart P, App. 1, 11.02-11.14 and 11.16-11.19.

Finally, plaintiff contends that his  mental impairment meets or equals Listing 12.04, mood disorder.  As discussed above, the only evidence that plaintiff has any mood disorder is Dr. Cronin's report, which cannot be considered in reviewing the administrative law judge's decision.

D. <u>Residual Functional Capacity</u>

Plaintiff argues that the administrative law judge erred in determining that he had the residual functional capacity to perform physical and mental work activities on a sustained basis.  The determination of residual functional capacity is an assessment of what work-related activities a plaintiff can perform despite his limitations.  20 C.F.R. § 404.1545(a)(1).  It must be based on all of the relevant evidence in the record including statements from medical sources, the claimant and others.  20 C.F.R. §§ 404.1545-1546.

1. <u>Credibility</u>

25

In making a credibility determination, the administrative law judge must consider the degree to which the claimant's statements about his symptoms can be reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529. Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3); Social Security Ruling 96-7p.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility. Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000). In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying."). However, the administrative law judge still must build an accurate and logical bridge between

26

the evidence and the result.  <u>Shramek</u>, 226 F.3d at 811.  The court will affirm a credibility

determination as long as the administrative law judge gives specific reasons that are

supported by the record.  <u>Skarbeck v. Barnhart</u>, 390 F. 3d 500, 505 (7th Cir. 2004).

In determining that plaintiff's statements about his symptoms were not entirely

credible, the administrative law judge considered the following:

- Dr. Steiner's testimony that plaintiff did not have any radicular neurological loss and that there was no evidence in the medical record that plaintiff had been laid up for long periods of time because of pain;

- Dr. Healy's 2002 opinion that plaintiff was exaggerating his symptoms and was capable of full-time work;

- Dr. Belich's 2004 conclusion that plaintiff exhibited an enormous amount of emotional, functional overlay and symptom magnification;

- Plaintiff's ability to work in 2000 and 2001 as a forklift driver, even though he had had extensive treatment for back pain and hand tremors;

- Lack of evidence of significant worsening in plaintiff's condition on or around the time of his alleged onset date in 2003;

- Numerous references to plaintiff doing a lot of walking and losing a significant amount of weight;

- Lack of evidence of medical treatment from July 2004 to July 2005, suggesting that plaintiff's pain at that time was not affecting his ability to function on a continual basis;

- Plaintiff's failure to give up smoking even though it interfered with the healing of his back;

- Plaintiff's daily activities, including driving, cooking, cleaning and shopping; and

- Plaintiff's lack of effort in seeking other work.

AR 30-33.  Plaintiff does not criticize the administrative law judge's reasoning, but rather cites comments by vocational counselors that support his statements concerning his pain and limitations.  However, none of these third-party statements show that the administrative law judge was patently wrong.

Plaintiff cites Dr. Cronin's opinion, but as discussed above, that opinion postdates the administrative law judge's decision and cannot be considered.  Plaintiff refers to Jacobs's January 5, 2005 comment that she observed plaintiff experiencing a lot of pain, frequently changing positions and having difficulty walking.  The administrative law judge specifically addressed this comment in his decision but discounted it because plaintiff stated at that evaluation that he was "healthy as a horse" and was interested in returning to work.  Although he found plaintiff's statements sincere, he stated that he gave greater weight to the medical evidence, including the medical expert's opinion.

Plaintiff also refers to comments made by two Department of Vocational and Rehabilitations Services counselors that he was in pain, had hand tremors and was unable to sit for more than 45 minutes.   Although the vocational counselors' observations may corroborate plaintiff's subjective complaints, they do not establish that plaintiff was incapacitated for long periods of time with pain.  The administrative law judge considered

28

all of the evidence of record, both favorable and unfavorable, and gave specific reasons for concluding that plaintiff's pain was not as persistent and severe as he claimed. The adjudicator's reasons are supported by the record, and he built an accurate and logical bridge from the evidence to his conclusion that plaintiff's testimony concerning his symptoms was not entirely credible. Plaintiff has not demonstrated that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.

2.  Treating physician's opinion

Plaintiff contends that the administrative law judge erred in not giving Dr. Lagus's opinion controlling weight. Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. Id.; 20 C.F.R. § 404.1527(d)(2). When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. Id. These factors include the number of times the treating

29

physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors. 20 C.F.R. § 404.1527(d)(2). An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., and must base his decision on substantial evidence and not mere speculation. White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

The administrative law judge did not give great weight to the opinion of Dr. Lagus that plaintiff's back condition prevented him from working for an indefinite period of time. He concluded that Lagus's opinion was based primarily on plaintiff's subjective assertions of pain rather than the objective medical evidence of record. He also found the opinion inconsistent with the opinions of Drs. Steiner, Belich, Allen and Rieser, who are specialists, and the state agency physicians. He also noted Belich's comment that Lagus had performed superficial examinations of plaintiff and prescribed various types of narcotic pain relievers, which Belich believed were inappropriate given plaintiff's history of cocaine abuse. The administrative law judge pointed out that Lagus's only specific limitation related to plaintiff's manual dexterity, which was taken into consideration in the residual functional capacity assessment. In sum, the administrative law judge considered all of the relevant factors and gave good reasons for not giving great weight to the opinion of Lagus.

30

Further, it is well-settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (administrative law judge could reject portion of physician's report based upon plaintiff's own statements of functional restrictions where administrative law judge found plaintiff's subjective statements not credible); Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir. 2001) (affirming administrative law judge's disregard of treating physician's opinion because it "was based largely upon the claimant's self-reported symptoms" and was not supported by the objective medical evidence); Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion of disability premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where those complaints have been properly discounted). From my finding that the administrative law judge properly discounted plaintiff's subjective statements as not credible, it follows that he could reject Dr. Lagus's opinion, which was based on those statements.

3.  Side-effects of plaintiff's prescribed medications

Plaintiff contends that the administrative law judge failed to consider the side effects of his pain medications. However, in his decision, the administrative law judge discussed

plaintiff's statements that methadone takes the edge off his pain but causes him to experience drowsiness, fatigue, concentration and memory problems.  AR 29.  He noted that plaintiff got some pain relief from Tylenol but had not taken any medications from April to November 2006.  Also, the administrative law judge noted that although plaintiff attempted to take medications for his hand tremors, the medications caused him lightheadedness.  AR 29.  Finally, given plaintiff's allegations concerning the side effects of his prescribed medications, the administrative law judge precluded him from work at heights or around dangerous machinery.  Plaintiff fails to show that any further limitations were necessary.

## E.  <u>Step Five</u>

Plaintiff contends that the administrative law judge erred in relying on the vocational expert's testimony that there were jobs available in the regional economy that plaintiff could perform.  In support, he points out that both vocational experts testified that he could not work if he missed work more than two days a month.  However, because the administrative law judge did not find that the medical evidence supported plaintiff's testimony that he had to miss two days of work a month, he did not include that restriction in the hypothetical question posed to vocational expert Harren.  The administrative law judge relied on medical expert Steiner's testimony that none of the medical evidence suggested that plaintiff was incapacitated for long periods of time with pain.  Only those limitations supported by

32

medical evidence in the record need be incorporated into the residual functional capacity finding and the hypothetical posed to the vocational expert.  Young v. Barnhart, 362 F.3d 995, 1001-02 (7th Cir. 2004); Steele, 290 F.3d at 942.   Nothing indicates that the hypothetical question posed to vocational expert Harren was improper or not supported by the medical evidence.   In response to the adjudicator's hypothetical question, Harren testified that there were three jobs that the individual could perform in Minnesota. (Plaintiff resides in a region that includes Minnesota.)

Also, plaintiff contends that the administrative law judge should have given more weight to the vocational opinions of Jack Casper and Jay Smith.  The administrative law judge discusses both opinions, but did not give Casper's opinion any significant weight because it was inconsistent with the overall evidence of record, including the testimony of Harren.  The administrative law judge did not give any weight to Smith's opinion because it was internally inconsistent.  The administrative law judge noted that Smith had found plaintiff permanently and totally disabled but then had concluded that plaintiff could return to the labor market with some vocational rehabilitation.  The administrative law judge's reasoning is well-founded and supports his conclusions.  Moreover, in finding plaintiff not disabled, the administrative law judge relied reasonably on the testimony of vocational expert in response to the hypothetical question he posed containing plaintiff's limitations.

33

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED.   Plaintiff Herbert J. Buhr's motion for summary judgment is DENIED and his appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 27th day of August, 2009.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge

34